AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
4/22/20

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| | ) | 3:20-mj-198 |
| Michael J. Rhea | ) | Michael J. Newman |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 13, 2020__ in the county of __Montgomery__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count 1: 18 U.S.C. §§ 922(g)(3), 924(a)(2) | Possession of a firearm by a person who is an unlawful user of, or addicted to, a controlled substance |
| Count 2: 26 U.S.C. §§ 5841, 5861(d), and 5871 | Receiving or possessing a firearm not registered to him in the National Firearms Registration and Transfer Record |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*Complainant's signature*

TFO Bradley A. Meeker, FBI
*Printed name and title*

Sworn to before me and signed in my presence via facetime.

Date: __4/22/2020__

Michael J. Newman
United States Magistrate Judge

City and state: __DAYTON, OHIO__    Hon. Michael J. Newman, U.S. Magistrate Judge
*Printed name and title*

10:16 AM, Apr 22, 2020                    Via electronic means.

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Bradley A. Meeker, hereinafter referred to as the "Affiant", being duly sworn, deposes as follows:

### INTRODUCTION

1. Your Affiant is a Task Force Officer with the United States Federal Bureau of Investigation (FBI) within the meaning of 21 U.S.C. § 878, that is, an officer of the United States who is empowered by law to conduct criminal investigations of and to make arrests for offenses enumerated in 21 U.S.C. § 878. The information contained in this Affidavit is either personally known by your Affiant or relayed to him by other law enforcement officers involved in this investigation.

2. Your Affiant is a law enforcement officer and has been employed as such for the past twenty-three years. Since September 2017, your Affiant has been assigned to the FBI Joint Terrorism Task Force (JTTF) as a Task Force Officer (TFO). Since 1997, your Affiant has been employed as a sworn police officer with the City of Dayton, Ohio. From 2004 thru 2017, your Affiant was assigned to various investigative units, to include the Financial Crimes Unit, Homicide Unit, Arson Unit with the Dayton Fire Department and West Pod Detective Unit. Your Affiant joined the Dayton Regional Bomb Squad in April 2014 and became a certified Public Safety Bomb Technician in 2016. Since 2016 your Affiant has attended several advance courses in explosive disposal techniques, alternate disposal techniques for destructive devices, homemade explosives, stabilization of radiological disbursement devices and obtained a certification as a Tactical Bomb Technician. Your Affiant has been involved in previous post blast investigations, in addition to investigating persons who have built or possessed destructive devices. Your affiant has also participated in the execution of search warrants that resulted in the seizure of energetic powders, fireworks, and other material used in constructing destructive devices.

3. This affidavit is made in support of an application for a federal criminal complaint against **MICHAEL J. RHEA**, for (1) possession of a firearm by a person who is an unlawful user of, or addicted to, a controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2), and (2) receiving or possessing a firearm not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. The facts in this affidavit are submitted for the purpose of establishing probable cause, and do not include every fact known to your Affiant.

### RELEVANT STATUTES

#### 18 U.S.C. § 922(g)(3)

4. Title 18, United States Code, Section 922(g)(3) makes it unlawful for any person who is an unlawful user of, or addicted to, a controlled substance, to possess a firearm in or affecting commerce.

5. For purposes of this statute, a "firearm" is defined as, among other things, "any destructive device." 18 U.S.C. § 921(a)(3)(D). The term "destructive device" is defined in 18 U.S.C. § 921(a)(4) as:

(A) any explosive, incendiary, or poison gas--

    (i) bomb,

    (ii) grenade,

    (iii) rocket having a propellant charge of more than four ounces,

    (iv) missile having an explosive or incendiary charge of more than one-quarter ounce,

    (v) mine, or

    (vi) device similar to any of the devices described in the preceding clauses;

(B) any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and

(C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

### The National Firearms Act

6. The National Firearms Act (NFA), 26 U.S.C. §§ 5801-72, is a taxing scheme regulating the manufacture, sale, and transfer of certain specially dangerous and concealable weapons.

7. Under Title 26, United States Code, Section 5841, the NFA requires the government to maintain a central registry—the National Firearms Registration and Transfer Record—of all "firearms" in the United States which are not under the control of the United States.

8. For purposes of this provision, "firearm" is defined as, among other things, a "destructive device." 26 U.S.C. § 5845(a)(8). In turn, a "destructive device" is defined in 26 U.S.C. § 5845(f) to mean:

(1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or

which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.

9. Title 26, United States Code, Section 5861(d) prohibits any person from receiving or possessing a "firearm" which is not registered to that person in the National Firearms Registration and Transfer Record. Title 26, United States Code, Section 5871, states that any person who violates this section is subject to imprisonment for up to ten years.

### FACTS ESTABLISHING PROBABLE CAUSE

10. On March 13, 2020, at approximately 7:37 p.m., Kettering Police Department (KPD) Officer Matthew Stull was on patrol in the parking lot of Dot's Market, at 2274 Patterson Rd., Kettering, Ohio. Officer Stull observed a white Chevrolet Truck, Ohio license HUW4482, park in the lot with a male driver and female passenger. The driver and passenger exited the vehicle and went into Dot's Market. Officer Stull ran the truck's registration through the LEADS system, which returned showing an active warrant for the registered owner, **MICHAEL J. RHEA**, for drug possession in Greene County. Officer Stull had previously arrested **RHEA** and recognized him.

11. Officer Stull then observed **RHEA** return to his truck. Officer Stull pulled in behind **RHEA** and asked **RHEA** to exit the truck to speak with him. Officer Stull explained to **RHEA** that **RHEA** had a warrant for his arrest and that Officer Stull was going to detain him. During a search of **RHEA**'s person, **RHEA** admitted to having a methamphetamine pipe in his right jacket pocket, which Officer Stull located and seized. Officer Stull placed **RHEA** in the rear of his patrol car.

12. KPD Officer Browne then arrived on the scene. Officer Stull told Officer Browne that **RHEA** had been detained and had a methamphetamine pipe in his pocket. Officer Stull also told Officer Browne that he recognized **RHEA** from a previous contact where **RHEA** had bomb-making material in his truck (see paragraph 21 below).

13. Officer Stull and Officer Browne then began to search the interior of **RHEA**'s truck. During the search of the truck, the officers first saw several BB guns sitting on the bench seat and floor of the truck. Officer Stull then lifted the front seat armrest and observed an item wrapped in a yellow bandana. Upon further observation, Officer Stull found that the yellow bandana was tied to a metal pipe with an end cap, and that a green fuse was coming from the pipe. Officer Stull recognized the item that he was holding to be a pipe bomb and placed it back on the front seat. Officer Stull then went back to his patrol car and asked **RHEA** what was in that bandana and if it was dangerous. **RHEA** told Officer Stull it was nothing explosive. KPD requested the presence of the Dayton Police Department Regional Bomb Squad.

14. Officer Stull read **RHEA** his Miranda rights. **RHEA** agreed to speak and told Officer Stull that a glasses case containing two additional glass methamphetamine pipes that had been recovered from the passenger of **RHEA**'s truck belonged to **RHEA**. **RHEA** also stated that he was trying to go to rehab for methamphetamine use.

15. The Dayton Police Department Regional Bomb Squad responded to the scene. Lt. Jason Hall, Dayton Bomb Squad Commander arrived on scene with other bomb technicians. Lt. Hall x-rayed the suspected pipe bomb, which revealed the pipe was capped on both ends and showed evidence of being filled with powder and several dense, spherical objects.

16. The suspected pipe bomb was then removed from the scene and transported to a more remote location, the City of Kettering's leaf/mulch facility on Spaulding Road. A successful render safe procedure was conducted on the suspected pipe bomb by remotely removing one of the end caps, allowing the contents within the pipe to be removed/separated from the pipe. Lt. Hall noted the pipe to be approximately 1 inch in diameter, with green hobby fuse protruding from a hole that had been drilled into the pipe wall. The pipe was wrapped in green tape. Inside of the pipe was a black granular powder with gold and silver BB's mixed in. The pipe and contents were collected as evidence and placed into the Kettering Police Department's property room. Officers searching **RHEA**'s truck also located a plastic bottle with a pour tip that contained BBs.

17. On March 23, 2020, Lt. Hall removed a small amount of the black granular powder that had been collected as evidence from inside of the pipe. Lt. Hall conducted a Flame Test by introducing the black granular powder to an open flame. The black granular powder deflagrated, that is combusted, when introduced to the open flame, indicating the powder was energetic. A sample of the black granular powder, along with a sample of the green fuse that was found protruding from the pipe, was sent to the State of Ohio Fire Marshal's Forensic Laboratory for testing. Results revealed the black granular powder to be double base disc smokeless powder and the green fuse to be black powder fuse.

18. Based on training and experience, your Affiant knows that pipe bombs are commonly constructed using pipes, end caps, fuse material, a combustible powder, and small metal objects intended to serve as shrapnel. Based on my training and experience, your Affiant believes the pipe bomb located in **RHEA**'s truck constitutes a destructive device as defined in 18 U.S.C. § 921(a)(3)(D) and (a)(4), and 26 U.S.C. § 5845(a)(8) and (f), that is, an explosive bomb or similar device, and/or any combination of parts either designed or intended for use in converting any device into an explosive bomb or similar device and from which such an explosive bomb or similar device may be readily assembled.

19. On April 15, 2020, your Affiant spoke with a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Forensic Chemist regarding the double base disc smokeless powder found inside the pipe, as described in paragraph 17. According to the forensic chemist, as of January 2020, only Alliant Powder, located in Radford, Virginia, distributes disc morphology double base smokeless powder that is manufactured in the United States. The same type of powder is manufactured outside the United States in Canada and Australia.

4

20. On or about April 3, 2020, your Affiant was advised by the ATF that a search of the National Firearms Registration and Transfer Record revealed that the pipe bomb located in **RHEA**'s truck is not registered to **RHEA**.

21. A review of a Kettering Police Department Report from July 2019 shows the following:

    a. On July 28, 2019, Officers Colon and Wolf arrested **RHEA** while in the act of a theft offense at the Meijer store, located at 4077 Wilmington Pike, Kettering, Ohio. **RHEA** was apprehended by Officer Wolf as he was attempting to enter the driver's side door of a white Chevrolet truck, Ohio license HGR4901. During a search of **RHEA**'s person, Officer Wolf located a glass methamphetamine pipe.

    b. Officers Anderson and Wiskirchen conducted an inventory search of the white Chevrolet truck, which was to be towed. Officers located marijuana inside the vehicle, along with a black Spiderware backpack. The backpack contained a black case and a red cylindrical metal container, which was attached to a silver metal cylindrical container. Marijuana and LSD were located inside the cylindrical metal containers. A small piece of cellophane was located in the backpack, which contained a clear crystal substance that Officer Anderson recognized to be suspected methamphetamine.

    c. Officer Anderson then opened the black case which contained two metal pipes with pipe caps attached on each end, model rocket engine motors, green hobby fuse, electric matches (igniters) and razors. Officer Anderson believed these items to be for potential pipe bomb manufacturing. Also, found in the black case was a copy of a state search warrant/inventory list, which was for **RHEA**'s previous address.

    d. **RHEA** was interviewed by Officer Anderson and Wiskirchen. During the interview **RHEA** admitted to possession of the methamphetamine pipe found on his person, marijuana and LSD found in the containers. **RHEA** stated during questioning that he uses methamphetamine daily and uses LSD as much as he can.

    e. **RHEA** denied knowledge of the metal pipes and rocket engine motors, but told officers he did have green fuse cord in the bag to use as cannon fuse. **RHEA** referred to the backpack during the interview as "my backpack."

22. A review of Montgomery County, Ohio, court records shows that on or about November 25, 2019, **RHEA** was charged with aggravated possession of methamphetamine and possession of LSD, in Montgomery County Court of Common Pleas, Case No. 2019 CR 03206. **RHEA** tendered pleas of guilty to those offenses and, on or about February 18, 2020, **RHEA** was granted Intervention in Lieu of Conviction on those charges. Pursuant to the Decision and Order of Intervention in Lieu of Conviction, **RHEA** was to undergo a period of rehabilitation of not less than one year, conditioned upon his voluntary entrance into an appropriate drug treatment facility.

23. Based upon the above information, your Affiant submits that there is probable cause to believe that, on or about March 13, 2020, in the Southern District of Ohio, **MICHAEL J. RHEA**: (1) knowing that he was an unlawful user of or addicted to a controlled substance, knowingly possessed a firearm, as defined in 18 U.S.C. 921(a)(3)(D) and (a)(4), specifically, a destructive device, in and affecting commerce, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2); and (2) knowingly possessed a firearm, as defined Title 26, United States Code, Section 5845 (a)(8) and (f), specifically, a destructive device, which was not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871.

_____
Bradley A. Meeker, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me this 22nd day of April 2020.

_____
HONORABLE
Michael J. Newman
UNITED STATES MAGISTRATE JUDGE
United States Magistrate Judge

10:17 AM, Apr 22, 2020

**Via electronic means.**

6